[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14009
Non-Argument Calendar

_____

D.C. Docket No. 1:05-cr-00206-WS-B-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEONARD EDWARD WESTRY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 28, 2015)

Before JORDAN, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Leonard Edward Westry, Jr., appeals his sentence imposed following

revocation of his supervised release.  We vacate and remand for resentencing.

## I.    BACKGROUND

In 2006, Westry was sentenced to 180 months of imprisonment followed by 120 months of supervised release after pleading guilty to a drug crime.  He later received two sentence reductions, pursuant to 18 U.S.C. § 3582(c)(2);  his sentence was reduced to 102 months of imprisonment.  In March 2013, Westry was released from prison and began his term of supervised release.  In 2014, Westry's probation officer petitioned the district judge to revoke his supervised release, because Westry had violated the conditions of his release by failing to report for eight different drug screenings.  Westry voluntarily waived his right to an initial hearing, admitted the allegations, and the judge found him guilty.

On August 20, 2014, at the final supervised-release-revocation hearing, Westry explained, although he had found a job after his release from prison, he lost it for lack of transportation.  He also explained he had a drug problem. Consequently, Westry requested that the judge sentence him to a total of 6 months of imprisonment followed by a 28-day Salvation Army, drug-treatment program. This sentence would total 7 months of confinement and be comparable to the low end of his revocation Sentencing Guidelines range of 7 to 13 months of imprisonment.  Westry told the judge  he wanted to undergo psychiatric treatment, because he had been through a lot.  The government responded that, under the circumstances, including Westry's extensive criminal history, a sentence of 12 to

2

13 months of imprisonment followed by an additional 108 months of supervised release was appropriate.

The judge explained that Westry obviously needed help, because he had struggled with drugs, mental health, and employment issues.  The judge stated that imprisonment was necessary and expressed hope that, during his period of confinement, Westry would be able to obtain help for his drug addiction.  The judge stated he had considered the 18 U.S.C. § 3553(a) factors and the Chapter VII provisions of the Sentencing Guidelines.  The judge sentenced Westry to 12 months of imprisonment, because that amount of time was needed to punish Westry and to give him the opportunity to avail himself of any available drug treatment and vocational programs.

After the district judge announced the 12-month sentence, Westry's counsel asked the judge to consider a sentence of 12 months and 1 day, which would allow Westry to qualify for good-time credits.  The judge denied the request and stated a full 12 months was needed to make sure that Westry received the full benefit of any available treatment.  Westry did not raise any objections at the end of the sentencing hearing.

## II.    DISCUSSION

On appeal, Westry argues the district judge's consideration of the need for him to obtain drug and mental-health treatment was plain error, because it fell

afoul of the Supreme Court's decision in *Tapia v. United States*, 564 U.S. ___, 131 S. Ct. 2382 (2011), and this court's decision in *United States v. Vandergrift*, 754 F.3d 1303 (11th Cir. 2014). The government responds the judge's error, although plain, did not affect Westry's substantial rights because other considerations, including its argument about Westry's criminal history, the need to punish him, and the § 3553(a) factors, weighed more heavily in the judge's determination.

We generally review the sentence imposed by a district judge on revocation of supervised release for reasonableness. *Vandergrift*, 754 F.3d at 1307. When a defendant does not raise a relevant objection at the time of sentencing, however, we review for plain error. *Id.* To show plain error, a defendant must demonstrate "(1) that the district court erred; (2) that the error was plain; and (3) that the error affected his substantial rights." *Id.* (internal quotation marks and alteration omitted). The third prong "usually means that the error must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632, 122 S. Ct. 1781, 1786 (2002) (internal quotation marks omitted). This prong is satisfied when the defendant establishes "a reasonable probability that, but for the error, the outcome of the proceedings would have been different." *United States v. Henderson*, 409 F.3d 1293, 1308 (11th Cir. 2005) (internal quotation marks omitted).

4

Plain-error review "is permissive, not mandatory"; we have "authority to order correction, but [are] not required to do so." *United States v. Olano*, 507 U.S. 725, 735, 113 S. Ct. 1770, 1778 (1993). If a defendant meets the three requisite conditions, then we must decide whether "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S. Ct. at 1779 (internal quotation marks and alteration omitted). We have held that a defendant met the fourth prong of plain error analysis where, pre-*Booker*,[1] "the district judge imposed the lowest permissible sentence under the mandatory guidelines and stated that she thought the sentence was too high" but had the discretion to impose a lower sentence after *Booker* at the time of the defendant's appeal. *Henderson*, 409 F.3d at 1308.

Under 18 U.S.C. § 3583(e)(3), a district judge may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release, if he finds by a preponderance of the evidence a defendant has violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). In *Tapia*, the Supreme Court held a sentencing court may not impose or lengthen a prison term to promote an offender's rehabilitation. *Tapia*, 564 U.S. ___, 131 S. Ct. at 2391. We recently extended *Tapia*'s holding and explained it applies "whether a person is initially being sent to prison or being sent back to prison after

---

[1] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

a period of supervised release." *Vandergrift*, 754 F.3d at 1309. Moreover, in *Vandergrift*, we held "*Tapia* error occurs where the district court *considers* rehabilitation when crafting a sentence of imprisonment," not merely when it (1) tailors the length of the sentence to permit completion of a rehabilitation program, or (2) makes rehabilitation the dominant factor in reaching its sentencing determination. *Id.* at 1310. A judge may not consider rehabilitation "when determining whether to impose or lengthen a sentence of imprisonment." *Id.* "Because it is impermissible to consider rehabilitation, a court errs by relying on or considering rehabilitation in any way when sentencing a defendant to prison." *Id.* at 1311.

In *Vandergrift*, defendant Walter Vandergrift served a prison sentence for possession and distribution of child pornography. *Id.* at 1305. His supervised release was revoked after the judge determined he had possessed or had access to a pornographic DVD and a Maxim magazine, which contained sexually stimulating material. *Id.* at 1305-06. In revoking Vandergrift's supervised release, the judge sentenced him to 24 months of imprisonment and explained he had to consider (1) "the safety of the public"; (2) "the examples set to others to deter similar conduct"; (3) just punishment for the violations; and (4) what was best for Vandergrift. *Id.* at 1306. Relying in part on a psychologist's testimony, the judge also had explained Vandergrift might be helped by a prison sentence for his

mental-health treatment and vocational training.  *Id.*  Specifically, the judge stated, "a period of time in the prison system not only would benefit the public, or could, at least more than not having that, but could also help save the defendant's life." *Id.*

In *Vandergrift*, we determined the judge had erred in considering rehabilitation when imposing Vandergrift's sentence; we determined the error was plain.  *Id.* at 1310-12.  Nevertheless, we affirmed, because Vandergrift had failed to prove the third prong of the plain-error test, that the error had affected his substantial rights.  *See id.* at 1312.  Specifically, Vandergrift failed to show his sentence would have been different, because the sentencing transcript reflected that his rehabilitative needs constituted only a minor portion of the district judge's reasoning.  *Id.*  We explained, "[t]he [district] court's primary considerations were for the safety of the public and deterring others from similar conduct.  Indeed, the court emphasized its concern that Vandergrift continued to possess" pictures he had taken of young boys about whom he had fantasized.  *Id.*

Westry has met the first two prongs of plain-error review: the district judge clearly considered the need for rehabilitation in imposing the sentence, and, after *Vandergrift*, doing so was plain error.  *See id.* at 1310-12.  The only remaining issues are whether the judge's error affected Westry's substantial rights and

7

whether that error implicates the fairness, integrity, or public reputation of the judicial proceedings. *See Vandergrift*, 754 F.3d at 1307, 1312.

On this record, Westry has shown a reasonable probability of receiving a lower sentence but for the error; therefore, he has met the third prong of the plain-error test. *See Henderson*, 409 F.3d at 1308. Two facts from the sentencing proceeding support this conclusion. First, the district judge declined to impose Westry's requested 7-month sentence; in sentencing him to 12 months of imprisonment, the judge stated it was for Westry's need to obtain treatment while in prison. *See id.* Second, when Westry requested that he be sentenced to 12 months plus 1 day of imprisonment in order to qualify for good-time credits, the judge specifically declined the request to make sure that Westry could avail himself fully of any treatment programs in prison. *See Henderson*, 409 F.3d at 1308. The government's contention that other permissible factors, such as the § 3553(a) factors and the stated need to punish Westry were the judge's primary considerations, is unpersuasive because those permissible factors received comparably less focus in the judge's explanation of the sentence. In contrast to *Vandergrift*, where treatment represented only a minor portion of the judge's reason for imposing the sentence, other factors, such as protecting the public from the defendant factored more prominently in this case, where the record shows the judge's primary reason for sentencing Westry to a full year was to allow him to

8

obtain treatment. *See Vandergrift*, 754 F.3d at 1312. Because the record shows a reasonable probability that the district judge well may have imposed a different sentence had it not been for Westry's need to obtain drug, mental health, and vocational treatment, Westry has made a showing of prejudice and satisfied the third prong of plain error. *Id.*

Moreover, Westry has met the fourth prong of the plain-error test. *See Olano*, 507 U.S. at 736, 113 S. Ct. 1779. The judge specifically crafted his sentence to ensure that Westry would serve a full 12 months of imprisonment and nothing less. *See Henderson*, 409 F.3d at 1308. Given the strong suggestions in the record the judge lengthened Westry's sentence because of his reliance on an impermissible factor and the reasonable probability Westry would have received a lower sentence absent this consideration, we conclude this error seriously affected the fairness, integrity, and public reputation of judicial proceedings. *See id.* We exercise our discretion to correct the judge's plain error by vacating and remanding his case for resentencing. *See Olano*, 507 U.S. at 736, 113 S. Ct. 1779.

**VACATED AND REMANDED.**