[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13154
_____

D.C. Docket No. 2:04-cr-00033-WHA-SRW-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WALTER HENRY VANDERGRIFT, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(June 18, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and BUCKLEW,* District Judge.

WILSON, Circuit Judge:

_____

*The Honorable Susan C. Bucklew, United States District Judge for the Middle District
of Florida, sitting by designation.

Walter Henry Vandergrift appeals his 24-month sentence imposed upon revocation of his supervised release.  After review of the parties' briefs, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

After serving a 97-month sentence for the possession and distribution of child pornography, Vandergrift began a three-year term of supervised release.  Before the expiration of supervised release, Vandergrift's probation officer filed a petition seeking revocation of his supervised release.  According to the petition, Vandergrift had violated the conditions of his supervised release by: (1) failing to obtain lawful employment; (2) failing to obey instructions to search for and obtain employment; (3) knowingly giving false information to a probation officer when questioned about the whereabouts of another federal supervisee (his roommate); (4) possessing or having access to a pornographic DVD and a Maxim magazine, both of which contained sexually stimulating material; and (5) violating 18 U.S.C. § 1001, which prohibits making materially false statements to a federal agent, when he knowingly lied to a probation officer about his roommate's absence.[1]

---

[1] Vandergrift has since pleaded guilty to violating 18 U.S.C. § 1001, based on his misrepresentation regarding his roommate's absence, which formed the basis of release violations 3 and 5.  He was sentenced to 24 months' imprisonment to run consecutively to the separate 24-month sentence he received for violating the terms of his supervised release that is the subject of this appeal.  (No. 2:12-cr-00149 (M.D. Ala), CM/ECF Doc. 44).

Following a revocation hearing, the district court found by a preponderance of the evidence that Vandergrift had committed each of the five alleged violations and subsequently revoked his supervised release. At sentencing for these violations, the district court imposed an above-guidelines sentence of 24 months' imprisonment to be followed by one year of supervised release. The court explained its reasons for imposing the sentence as follows:

> In assigning what the appropriate and just punishment would be in this case, I've got to consider all factors set out in 18 U.S.C. Section 3553. I've got to consider the safety of the public. I've got to consider the example set to others to deter similar conduct. I've got to consider just punishment for the crime that was committed, and here being a violation of these terms of supervised release. I've also got to consider what's best for the defendant as a factor in the equation.

> It is difficult to decide what really is best for the defendant in this case. I'm impressed with the testimony from Dr. Kirkland [Vandergrift's expert witness] that [Vandergrift] does not thrive in an unstructured environment; that he came out of prison at least in better physical condition than he got when he was out under fairly close supervised release, but still his physical condition and stamina deteriorated.

> I'm also impressed with Dr. Kirkland's testimony as to the lack of ability and the difficulty in finding, outside the prison system, any vocational training and help that might assist the defendant. But I'm also considering the fact that while Dr. Kirkland is not an M.D., he is a psychologist with a great deal of experience in these kinds of things, and he suggests bipolar disorder on the part of the defendant, which may can be helped in some way in the prison system. That and vocational training for a period of time in the prison system not only would benefit the public, or could, at least more than not having that, but could also help save the defendant's life. I don't know, but that's a possibility.

3

So having considered all of these, I'm going to—and I do find that a reasonable sentence in this case is going to be 24 months in prison, the maximum under statute, to be followed by one year of supervised release, during which time—and having had the experience of the imprisonment, during which time I hope that something can be found to put him on a better course.

. . . .

Pursuant to 18 U.S.C. Section 3553(c)(2), the sentence is being imposed in excess of the guidelines at 24 months to promote respect for the conditions of supervised release ordered by the Court; to reflect the seriousness of the defendant's conduct; to provide just punishment for the violation offenses; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and also for the benefit of the defendant.

Vandergrift now appeals.

On appeal, Vandergrift argues that the district court erred with respect to two of the alleged supervised release violations. Specifically, Vandergrift claims that he did not fail to obtain employment "willfully," and that he did not constructively possess the pornographic DVD and Maxim magazine. He also challenges the procedural reasonableness of his 24-month sentence, arguing that the district court relied on impermissible factors in arriving at the sentence in violation of *Tapia v. United States*, __ U.S. __, 131 S. Ct. 2382 (2011).

## II. DISCUSSION

"We . . . review a district court's revocation of supervised release for an abuse of discretion." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (per curiam). "We review the sentence imposed [by the district court] upon

4

the revocation of supervised release for reasonableness." *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) (per curiam). But because Vandergrift did not object to the procedural reasonableness at the time of his sentencing, we review for plain error. *See United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc) (per curiam). In *Jones*, we held:

> Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice.

*Id.* And "[o]ur case law equates manifest injustice with the plain error standard of review." *United States v. Quintana*, 300 F.3d 1227, 1232 (11th Cir. 2002). Thus, in order to prevail, Vandergrift must demonstrate (1) that the district court erred; (2) that the error was "plain"; and (3) that the error "affect[ed his] substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 734, 113 S. Ct. 1770, 1776–78 (1993). "If all three conditions are met, [we then decide whether] the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (internal quotation marks omitted).

### A.  Revocation of Supervised Release

5

Vandergrift first argues that the government failed to prove that he committed violations (1) and (4)—failing to obtain lawful employment and possessing or having access to a pornographic DVD and a Maxim magazine.  But he admits the conduct underlying violations (3) and (5)—knowingly giving false information to a probation officer and violating 18 U.S.C. § 1001.  He also does not challenge the district court's conclusion that he committed violation (2)— failing to obey instructions to search for and obtain employment.  Because Vandergrift pleaded guilty to conduct underlying two of the supervised release violations, the district court did not abuse its discretion in revoking his supervised release.  *See United States v. Brown*, 656 F.2d 1204, 1207 (5th Cir. Unit A Sept. 1981) (per curiam) (holding that where the district court's decision to revoke a defendant's supervised release is supported adequately by one alleged violation, a possible error in consideration of other allegations is harmless).[2]

## B.  Reasonableness of the Sentence

Vandergrift also challenges the procedural reasonableness of his 24-month sentence.  Vandergrift contends that the district court made two errors when fashioning his post-revocation sentence.  First, he argues that it was impermissible to consider the factors set out under 18 U.S.C. § 3553(a)(2)(A)—the seriousness of

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

his offense, the need to promote respect for the law, and the need to provide just punishment for the offense—when crafting Vandergrift's post-revocation sentence. *See* 18 U.S.C. § 3583(e).  Second, he argues that it was also error to consider the benefits of rehabilitation when sentencing Vandergrift to 24 months' imprisonment.  *See Tapia*, __ U.S. at __, 131 S. Ct. at 2388–89.  We address each alleged error in turn.

### 1.  Alleged Impermissible Sentencing Factors

In assessing procedural reasonableness, a court's "fail[ure] to consider the § 3553(a) factors" constitutes "significant procedural error."  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  "It is only logical that a court's consideration of an improper § 3553(a) factor is likewise erroneous."  *United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012), *cert. denied* 133 S. Ct. 1506 (2013).

Section 3583(e) governs the revocation of supervised release.  It states that a district court must consider factors outlined in "section[s] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7)."  Absent from this list is § 3553(a)(2)(A), which allows a court to impose a sentence that "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense."  The text of § 3583(e) does not, however, *explicitly* forbid a district court from considering §3553(a)(2)(A).

7

The Supreme Court has not addressed whether it is error to consider a factor listed in § 3553(a)(2)(A) when imposing a sentence after revoking supervised release.[3] We have not addressed the issue in a published opinion,[4] and those circuits that have are split. The First, Second, Third, and Sixth Circuits have concluded that it is not error to consider §3553(a)(2)(A) when revoking supervised release, while the Fourth, Fifth, and Ninth Circuits concluded that it is error. *Compare United States v. Vargas-Dàvila*, 649 F.3d 129, 131–32 (1st Cir. 2011) (finding that § 3583(e) "does not forbid consideration of other pertinent section 3553(a) factors"), *United States v. Young*, 634 F.3d 233, 239 (3d Cir. 2011) (holding "that a district court does not commit procedural error in taking into account [§ 3553(a)(2)(A)] when imposing a sentence for the violation of supervised release"), *United States v. Lewis*, 498 F.3d 393, 399–400 (6th Cir. 2007) (holding that "it does not constitute reversible error to consider §

---

[3] Vandergrift argues that "the Supreme Court [in *Tapia*] has expressly confirmed that [§ 3553(a)(2)(A)] is outside the scope of what a district court can consider in imposing a sentence upon revocation of a defendant's supervised release." Vandergrift is mistaken. To be sure, the Supreme Court stated in dicta that courts "may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when *imposing* a term of supervised release" under § 3553(c). *Tapia*, __ U.S. at __, 131 S. Ct. at 2388 (second emphasis added). However, at issue here is *revocation* of supervised release under § 3583(e). Moreover, post-*Tapia* courts to address whether §3553(a)(2)(A) may be considered in the context of supervised release revocation have not considered *Tapia* in their analyses, much less treated it as binding precedent. *See United States v. Johnson*, 550 F. App'x 766, 772 (11th Cir. 2013) (per curiam); *United States v. Kippers*, 685 F.3d 491, 498 n.4 (5th Cir. 2012); *United States v. Chatburn*, 505 F. App'x 713, 717 (10th Cir. 2012); *United States v. Vargas-Dàvila*, 649 F.3d 129, 131–32 (1st Cir. 2011).

[4] *See Johnson*, 550 F. App'x at 772 ("Neither this Court nor the Supreme Court has addressed whether it is error to consider a factor listed in § 3553(a)(2)(A) in imposing a sentence after revoking supervised release.").

3553(a)(2)(A) when imposing a sentence for violation of supervised release, even though this factor is not enumerated in § 3583(e)"), and *United States v. Williams*, 443 F.3d 35, 47–48 (2d Cir. 2006) (same), *with United States v. Miller*, 634 F.3d 841, 844 (5th Cir. 2011) (holding "that it is improper for a district court to rely on § 3553(a)(2)(A) for the modification or revocation of a supervised release term"), *United States v. Crudup*, 461 F.3d 433, 438–39 (4th Cir. 2006) (recognizing that a district court is not to consider § 3553(a)(2)(A) when revoking supervised release), and *United States v. Miqbel*, 444 F.3d 1173, 1181–83 (9th Cir. 2006) ("Given that § 3553(a)(2)(A) is a factor that Congress deliberately omitted from the list applicable to revocation sentencing, relying on that factor when imposing a revocation sentence would be improper.").  Because the Supreme Court has not ruled on the issue and there is a circuit split, any alleged error cannot be "plain." *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (explaining that an error cannot be plain "[w]hen neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it").  Accordingly, Vandergrift cannot demonstrate plain error as to this issue.

### 2.  Alleged *Tapia* Error

In *Tapia v. United States*, the Supreme Court stated that the Sentencing Reform Act of 1984 prohibits federal courts from considering a defendant's rehabilitative needs when imposing or lengthening a prison sentence.  __ U.S. at

__, 131 S. Ct. at 2389.  This court has not decided whether *Tapia* applies in the context of resentencing upon the revocation of supervised release.  But we agree with our sister circuits and today hold that it does.  *See United States v. Lifshitz*, 714 F.3d 146, 150 (2d Cir. 2013) (per curiam); *United States v. Garza*, 706 F.3d 655, 657 (5th Cir. 2013); *Bennett*, 698 F.3d at 197; *United States v. Mendiola*, 696 F.3d 1033, 1041–42 (10th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005, 1006–07 (8th Cir. 2012); *United States v. Molignaro*, 649 F.3d 1, 4–5 (1st Cir. 2011).  In doing so, we recognize that *Tapia* abrogates our holding in *United States v. Brown*, where we stated that "a court may consider a defendant's rehabilitative needs when imposing a specific incarcerative term following revocation of supervised release."  224 F.3d 1237, 1240 (11th Cir. 2000).  *Tapia* made clear that prison is not to be viewed by sentencing judges as rehabilitative.  And that holds true whether a person is initially being sent to prison or being sent back to prison after a period of supervised release.  With this in mind, we address Vandergrift's final argument.

Vandergrift argues that during his sentencing hearing, the district court improperly considered Vandergrift's need for rehabilitation when it sentenced him to 24 months' imprisonment.  *See Tapia*, __ U.S. at __, 131 S. Ct. at 2388–89.  As discussed, because Vandergrift failed to object to the procedural reasonableness of his sentence below, we review for plain error.

10

Some courts, in the context of supervised release, have found *Tapia* error only where a district court specifically tailored the length of a defendant's sentence to meet some rehabilitative need. In *Lifshitz*, for example, the Second Circuit found no *Tapia* error where

> [t]he sentencing colloquy demonstrate[d] that the district court's primary considerations in sentencing Lifshitz were "promoting respect for the law and protecting the public from further crimes of this defendant." While the district court also considered Lifshitz's need for medical care, there is *no indication in the record that the district court based the length of Lifshitz's sentence on his need for treatment.*

714 F.3d at 150. (emphasis added). Applying a similar understanding of *Tapia*, the Tenth Circuit found *Tapia* error when a district court relied on rehabilitative factors to set the length of a defendant's sentence. *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011); *see also United States v. Deen*, 706 F.3d 760, 769 (6th Cir. 2013) (vacating and remanding where "[t]he record in [the] case permits no conclusion but that the length of [the defendant's] prison sentence was fixed to promote his rehabilitation").

Others have found *Tapia* error where rehabilitation was the "dominant" factor in the sentencing calculus. In *United States v. Garza*, the Fifth Circuit found *Tapia* error where "[t]he record ma[de] clear that [the defendant's] rehabilitative needs were the dominant factor in the court's mind" when it sentenced the defendant to 24 months' imprisonment. 706 F.3d at 662. Likewise in *United States v. Replogle*, the Eighth Circuit found that because "[d]eterrence, respect for

11

the law, and protection of the public were the dominant factors in the district court's [sentencing] analysis," the defendant's sentence did not run afoul of *Tapia*. 678 F.3d 940, 943 (8th Cir. 2012).

Turning to Vandergrift's case, we find that there was *Tapia* error because the district court considered an improper § 3553(a) factor when it sentenced Vandergrift: rehabilitation.  *See Bennett*, 698 F.3d at 200; *see also Gall*, 552 U.S. at 51, 128 S. Ct. at 597.  This amounts to procedural error.  We decline to limit *Tapia* to situations where the district court either 1) specifically tailors the length of a defendant's sentence to permit completion of a rehabilitation program or 2) makes rehabilitation the "dominant" factor in the sentencing court's calculus.  Instead, we hold that *Tapia* error occurs where the district court *considers* rehabilitation when crafting a sentence of imprisonment.

Our holding—that a district court errs when it *considers* rehabilitation when imposing or lengthening a sentence of imprisonment—is faithful to *Tapia*'s reasoning.  In *Tapia*, the Supreme Court emphasized "that imprisonment is not an appropriate means of promoting correction and rehabilitation."  *Tapia*, __ U.S. at __, 131 S. Ct. at 2388 (internal quotation marks omitted).  The Court explicitly stated that when a court is determining whether to impose or lengthen a sentence of imprisonment it "should *consider* the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a

12

prison term." *Id.* (first emphasis added).  From this language and rationale, it is clear that *Tapia* prohibits any consideration of rehabilitation when determining whether to impose or lengthen a sentence of imprisonment.

Our holding is also consistent with Eleventh Circuit precedent.  In *United States v. Mogel*, we noted that "[r]ehabilitative considerations have been declared irrelevant for purposes of deciding whether or not to impose a prison sentence and, if so, what prison sentence to impose."  956 F.2d 1555, 1563 (11th Cir. 1992).  We stated almost the same in *United States v. Vautier*: "[T]he need for medical care *may not be considered* in fixing the length of imprisonment, but may be considered in fixing the terms of the sentence other than incarceration." 144 F.3d 756, 762 (11th Cir. 1998) (emphasis added) (citing *United States v. Harris*, 990 F.2d 594, 596–97 (11th Cir. 1993)).  Because it is impermissible to consider rehabilitation, a court errs by relying on or considering rehabilitation in any way when sentencing a defendant to prison.  As with any other instance where a court considers an impermissible sentencing factor, *see, e.g.*, *United States v. Williams*, 456 F.3d 1353, 1371–72 (11th Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007) (finding error where district court considered impermissible factors when crafting the defendant's sentence), considering rehabilitation is error.  This is true regardless of how dominant the error was in the court's analysis and regardless of whether we can tell with

13

certainty that the court relied on rehabilitation because the sentence was tailored to a rehabilitation program.  Errors need not be severe or obvious to be errors. Accordingly, in light of *Tapia* and our own Circuit precedent, we find that the district court erred when it sentenced Vandergrift to prison because it considered rehabilitation when doing so.[5]

The sentencing transcript highlights the district court's consideration of rehabilitation in imposing Vandergrift's sentence.  The court began by stating that it was to "consider all the factors set out in 18 U.S.C. § 3553."  It continued: "I've also got to consider what's best for the defendant as a factor in the equation."  It noted that "it's difficult to decide what really is best for the defendant in this case," and that "vocational training for a period of time in the prison system not only would benefit the public, or could, at least more that not having that, but could also help save the defendant's life."  The court then handed down Vandergrift's 24-month sentence: "So having considered all of these . . . and I do find that a reasonable sentence in this case is going to be 24 months in prison, the maximum under the statute . . . ."  In concluding the sentencing hearing, the court once again stated that "the sentence is being imposed in excess of the guidelines at 24 months . . . for the benefit of the defendant."

---

[5] In so holding we recognize that our opinion is consistent with only the Fourth Circuit. *See Bennett*, 698 F.3d at 200.  We believe our sister Circuits have taken an unnecessarily narrow view of *Tapia* for the reasons discussed throughout.

14

Here the district court did exactly what *Tapia* and our precedent instruct district courts not to do—it *considered* rehabilitation when crafting Vandergrift's sentence of imprisonment.  As detailed above, the sentencing transcript demonstrates that the district court considered how prison would benefit Vandergrift and how incarceration might save his life when it imposed the 24-month sentence.  Such considerations are improper and amount to procedural error.

We recognize, though, that *Tapia* does not prohibit a district court from discussing rehabilitation during a sentencing hearing.  To be sure, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs[,] . . . [and] a court properly may address a person who is about to begin a prison term about these important matters."  *Tapia*, __ U.S. at __, 131 S. Ct. at 2392; *see United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012) (finding no *Tapia* error where the district court, after imposing the defendant's sentence, stated that the 210-month sentence would "provide the opportunity for rehabilitative programs").  But that is not what happened here.  Here, prison's rehabilitative benefits were considered in the course of deciding whether or not Vandergrift should be sentenced to prison at all.  And in the course of making that prison term 24 months long, the district court stated that it needed "to consider what's best for the defendant" and that "the sentence [was] being imposed . . . for the benefit of the defendant."  Such considerations are in

15

direct violation of *Tapia*. *See Tapia*, __ U.S. at __, 131 S. Ct. at 2388; *United States v. Grant*, 664 F.3d 276, 282 (9th Cir. 2011) (stating that "[w]hen a judge imposes prison, he may wisely believe that it will have rehabilitative benefits, but those benefits cannot be the reason for imposing it").

But our analysis does not stop here. Vandergrift has carried his burden on the first step of our plain-error analysis: he has demonstrated an error. *See Olano*, 507 U.S. at 732, 113 S. Ct. at 1777. To succeed, he must further demonstrate that the error is plain and that it affected his substantial rights. *See id.* at 734, 113 S. Ct. at 1777–78. We assume for the sake of argument that the error is plain and we turn to whether Vandergrift has shown that it affected his substantial rights. *See id.* He has not.

In order for an error to have affected substantial rights, it "must have affected the outcome of the district court proceedings." *Id.*, 113 S. Ct. at 1778. "Normally . . . the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong . . . ." *Id.* at 735, 113 S. Ct. at 1778. Vandergrift has failed to show that his sentence would have been different but for the court's consideration of rehabilitation. The sentencing transcript reflects that Vandergrift's "rehabilitative needs clearly constituted only a minor fragment of the court's reasoning." *Bennett*, 698 F.3d at 201. The court's primary considerations were for the safety of the public and deterring others from similar conduct. Indeed,

16

the court emphasized its concern that Vandergrift continued to possess photographs that he had taken of young boys about whom he had sexually fantasized.  It was Vandergrift's violations and the court's concern for the public "that drove the district court's sentencing decision."  *See id.* at 200.

For these reasons, despite our finding of *Tapia* error, the district court is affirmed.

**AFFIRMED.**